224 N.J. Super. 495 (1988)
540 A.2d 1313
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES L. ROBINSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 29, 1988.
Decided April 12, 1988.
*496 Before Judges O'BRIEN, HAVEY and STERN.
Alfred A. Slocum, Public Defender, attorney for appellant (Karl L. Guthrie of counsel and on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Robert E. Bonpietro, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by STERN, J.A.D.
*497 Defendant was charged in an indictment, as amended, with armed robbery, N.J.S.A. 2C:15-1, and other crimes. Subsequently, he filed a "motion to suppress" evidence. The motion was considered at a pretrial evidentiary hearing. It concerned the admissibility of a remark defendant made to the police at the time they arrived at his home during the course of an investigation and a subsequent statement given at police headquarters.
After the court concluded that the remark and statement were admissible and denied the motion, defendant pled guilty to the armed robbery charge and was sentenced to an indeterminate term not to exceed ten years. Other counts of the amended indictment were dismissed, and defendant was ordered to pay restitution in the amount of $491 and a $25 penalty for the benefit of the Violent Crimes Compensation Board at the rate of $5 per month.
On this appeal, defendant argues only that "(t)he incriminating statements obtained from the defendant should have been suppressed as the fruit of an illegal arrest" and "fruit of an illegal intrusion into the defendant's home." When the matter was submitted to us, we raised the issue concerning the appealability of the denial of the motion to suppress. We now hold that defendant's guilty plea constituted a waiver of his challenge to the admissibility of his statements. We therefore dismiss the appeal.
The only witness at the hearing was the arresting officer, Michael Zielenski, who testified that, as part of a police investigation concerning an armed robbery, he and his partner were directed to defendant. According to Zielenski, he asked defendant's mother "if her son was home and she said he was and she led us into his room.... He was awakened by us and he said, I know why you're here." The officer also testified that as a result of that remark, "[w]e advised him of his rights, verbally, at that time and he said, I know my rights. It's about the hold *498 up." Defendant was taken to police headquarters where he "was given [a] formal rights statement which he filled out, voluntarily. He did give us a statement concerning the hold up at that time." Officer Zielenski also testified that defendant was arrested at his house "[a]s soon as he told us that he knew why we were there."
At the hearing, defendant argued that there was no probable cause to enter his house or to arrest him and that, therefore, his statement was unlawfully obtained.[1] The court denied the motion, stating:
THE COURT: Well, it is not a search at all under any stretch of the imagination. It is an entry being made by the officer in the normal course of his investigation of a crime. So respectfully, I'm satisfied that the prosecutor has proven to this Court clearly, that there was probable cause to arrest him on the basis of the utterance and the investigation into the crime and that would follow, thereafter, in due candor from a defendant, I don't think there is any serious question about the statement itself given at the police station. He signed whatever form he had to, not once, but twice, and in effect, and gave a statement to the police which I find to be voluntary and there was no overriding of any right that he had under the circumstances.
Therefore, I am satisfied that the statement is admiss[i]ble and will be presented to the jury.
Generally, a guilty plea constitutes a waiver of all issues which were or could have been addressed by the trial judge before the guilty plea. See, e.g., State v. Truglia, 97 N.J. 513, 522-524 (1984); State v. Alevras, 213 N.J. Super. 331, 339-340 (App.Div. 1986); State v. Rosenberg, 160 N.J. Super. 78, 80 (App.Div. 1978), certif. den. 78 N.J. 332 (1978); State v. Raymond, 113 N.J. Super. 222, 226-227 (App.Div. 1971).[2] Under *499 New Jersey practice, there are three exceptions to the general rule involving waiver. Notwithstanding the guilty plea, by virtue of the rules governing criminal practice, a defendant may appeal from the denial of his motion to suppress as permitted by R. 3:5-7(d), from the denial of admission into pretrial intervention pursuant to R. 3:28(g), and, with consent of the court and approval of the prosecutor, from any other pretrial order when the issue is preserved, R. 3:9-3(f).[3]
The only rule possibly applicable for purposes of preserving appealability in this case is R. 3:5-7(d). In response to our invitation for briefs on the question, defendant relies on that rule.
Defendant never sought to preserve the issue of appealability at the time of plea, and there was no discussion of the subject at that time. Hence, R. 3:9-3(f), which was adopted in 1980 after recommendation of the Supreme Court's Task Force on Speedy Trial and which was designed to permit preservation of issues for appeal without the necessity of full trials merely to preserve the issue, is not applicable in this case. See Judicial Conference Report, Task Force on Postindictment Delay, 105 N.J.L.J. 521, 534-535 (1980).
However, R. 3:5-7(d), which permits the defendant to appeal from the denial of his motion to suppress, is also not applicable in this situation. R. 3:5 is the successor to R.R. 3:2A-1 et seq., which was adopted by our Supreme Court in 1962 in response to Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 *500 L.Ed.2d 1081 (1961), applying the exclusionary rule embodied in the Fourth Amendment to the states. R. 3:5 is entitled "Search Warrants," and it is clear that the rule relates to applications for and filings of applications to search for physical evidence and returns related thereto.[4] As part of the rule dealing with "search warrants," R. 3:5-7 concerns motions to suppress evidence seized pursuant to a warrant and evidence seized as a result of a warrantless search. That rule, which requires motions to suppress to be filed within 30 days of initial plea, see, e.g., State v. McKnight, 52 N.J. 35, 48 (1968); State v. Allaband, 134 N.J. Super. 353 (App.Div. 1974), is applicable only to state and federal constitutional claims of unlawful searches and seizure of physical evidence. See State v. Keegan, 188 N.J. Super. 471, 474 (App.Div. 1983), certif. den. 93 N.J. 320 (1983); State v. Morales, 182 N.J. Super. 502, 508 (App.Div. 1981), certif. den. 89 N.J. 421 (1982). See also State v. DeLane, 207 N.J. Super. 45, 48-49 (App.Div. 1986).
R. 3:5-7(d) was adopted in January 1977 following the United States Supreme Court opinion in Lefkowitz v. Newsome, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), which held that a guilty plea did not constitute waiver of an issue involving an illegal search when state law did not require such waiver. See Pressler, Current N.J. Court Rules, Comment R. 3:5-7 (1988) at 459. The rule permits a defendant to appeal from a judgment of conviction following the denial of his motion to suppress, notwithstanding that the judgment was entered pursuant to a guilty plea. Hence, this court has held that unsuccessful challenges to statements and Miranda violations cannot be raised on appeal after a guilty plea, pursuant to R. 3:5-7(d). See State v. DeLane, supra, 207 N.J. Super. at 48-49; State v. *501 Morales, supra, 182 N.J. Super. at 507-509; see also State v. Kaye, 176 N.J. Super. 484, 489 (App.Div. 1980), certif. den. 87 N.J. 316 (1981) (taking of blood sample); State v. Keegan, supra, (wiretaps statute). In fact, as in this case, Morales involved a claim that the statements "were the product of an illegal detention and that there was no probable cause for [defendant's] detention." 182 N.J. Super. at 507.
The fact that R. 3:5-7(d), as part of the rules involving "Search Warrants" embodied in R. 3:5-1 et seq., is not applicable to oral and written statements is further evidenced by the rules and procedures relating to statements. In 1967, our Supreme Court made clear that motions related to the admissibility and voluntariness of statements of a defendant had to be considered at trial, not in advance thereof, and were therefore not to be treated similarly to issues presented under the Fourth Amendment. The Supreme Court's decision in this regard came very shortly after the then recent opinion of the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and about four years after the adoption of R.R. 3:2A-6, the forerunner of R. 3:5-7. The determination of the Supreme Court concerning statements is embodied in State v. Graham, 59 N.J. 366 (1971), where the court stated:
It is urged that even though most evidential rulings must properly await the course of the trial, statements in the nature of confessions present special problems, such as those arising under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and should be dealt with before trial. Indeed in State v. Green, 49 N.J. 244 (1967), the defendant contended that he had a constitutional right to have the admissibility of his confession determined in advance of trial. We found no such constitutional right but recognized that arguments pro and con could readily be mustered on the question of whether it would not be better practice to have a pretrial determination on the issue of the confession's admissibility. We concluded that the subject should be dealt with at a judicial conference which we scheduled for May 11 and 12, 1967.
In State v. Travis, 49 N.J. 428 (1967), we noted that pending the outcome of the aforementioned conference and the promulgation of pertinent rules bearing on pretrial hearings on the admissibility of confessions `no such pretrial hearing shall be held.' 49 N.J. at 431. In State v. Yough, [49 N.J. 587, 587 (1967)], the defendant moved before trial for an order excluding his confession on the *502 ground that it was obtained in violation of Miranda, supra, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The trial judge entertained the motion but when the matter came before us we expressed our disapproval. In the course of our opinion we pointed out that `under our long-standing practice, the determination as to the admissibility of a confession is properly made at rather than prior to trial'; that proposed alterations of the practice were the subject of discussion at the May 1967 Judicial Conference and were receiving study; and that pending the promulgation of formal rules, `pretrial exclusionary motions addressed to confessions' should not be entertained. 49 N.J. at 590.
No pertinent formal rules have been promulgated to date and accordingly the authorized practice still is to hear such applications at rather than before trial. We understand that trial judges, in the exercise of their discretion, have occasionally heard such applications on the trial date but before actual selection of the jury and that after making their determinations they have immediately proceeded with the trial without any fragmentation or interruption. On a broad view, that course may be justified as representing a determination at rather than before trial within the contemplation of Green, Travis and Yough; in any event, we do not now disapprove it since it does serve to avoid the waste and inconvenience of having the members of a jury confined while the trial judge, in their absence, conducts a preliminary Miranda hearing or the like. [59 N.J. at 371-373].
Thus, State v. Graham approved the practice of consideration of issues related to the admissibility of a defendant's statement before jeopardy attached and trial commenced but only on the day of trial. In that regard, it deviated from then existing preferred practice of requiring issues related to admissibility of a statement to be decided only after the jury was impaneled and sworn.
In 1979, the Supreme Court again considered when decisions relating to the admissibility of statements should be made. See Report of the Supreme Court's Committee on Criminal Practice, 105 N.J.L.J. 425, 426 (1980) (separate statement, noting that a supplementary report had been filed in 1979).[5] The Court adopted R. 3:13-1(b), which permitted consideration of *503 "issues relating to the admissibility of statements by defendant... immediately prior to jury selection." The rule change was designed to benefit the jury, which did not have to sit "confined" (in the words of Graham) while the issue of voluntariness or compliance with Miranda was decided by a judge outside the presence of a jury. Moreover, the change permitted the issue to be decided before trial so that the State, if unsuccessful on the issue of admissibility, could seek review by leave to appeal prior to the attachment of jeopardy. See State v. Elysee, 159 N.J. Super. 380, 383-386 (App.Div. 1978). In 1982, R. 3:13-1(b) was again amended to permit consideration of the issue "at any time prior to trial." See Report of the Supreme Court's Committee on Criminal Practice, 109 N.J.L.J. 497, 498 (1982).
The 1979 adoption of R. 3:13-1(b), permitting pretrial rulings concerning evidentiary issues as well as admissibility of statements, was known to the Task Force on Speedy Trial at the time of its 1980 report to the Judicial Conference. As a result of the ability to decide issues pretrial, the Task Force recommended adoption of a rule permitting appealability from an adverse pretrial decision without the need for trial. See Judicial Conference Report, Task Force on Postindictment Delay, 105 N.J.L.J. 521, 533, 534-535 (1980). The Task Force was of the view that if the only real issue in the case involved the admissibility of a statement or confession, the issue should be resolved pretrial so that the parties could avoid the time and expense of a trial and yet have the matter reviewed on appeal. However, the recommendation later embodied in R. 3:9-3(f) expressly required the prosecutor's approval for a "conditional plea" preserving the issue, so that the State was not prejudiced by a guilty plea and appeal before trial if there was a need for immediate trial. See id. at 534-535; see also Report of the Criminal Practice Committee, 105 N.J.L.J. 425, 426 (1980) (separate statement).
In 1980, the Supreme Court adopted the conditional plea rule, R. 3:9-3(f). That rule controls appealability of adverse rulings *504 by the defendant after a guilty plea of all issues except those controlled by R. 3:5-7(d) and R. 3:28(g), cf. State v. Keegan, supra, 188 N.J. Super. at 474-475 and was not utilized in this case.
R. 3:5-7(d), relating to motions to suppress physical evidence, has no relevance to statements or confessions of a defendant. Therefore, the present appeal after a guilty plea following denial of defendant's motion to suppress his statements is dismissed.
NOTES
[1] Defendant appeared to argue that there were two separate aspects of his motion, one related to the "search" and one related to Miranda and the statement.
[2] There may be an exception, constitutionally required, with respect to waiver of a jurisdictional claim or claim involving a double jeopardy contention. Menna v. New York, 423 U.S. 61, 62 n. 2, 96 S.Ct. 241, 242 n. 2, 46 L.Ed.2d 195, 197 n. 2 (1975); Tollett v. Henderson, 411 U.S. 258, 266-267, 93 S.Ct. 1602, 1607-1608, 36 L.Ed.2d 235, 243 (1973); State v. Truglia, supra, 97 N.J. at 523; State v. Garoniak, 164 N.J. Super. 344, 349 (App.Div. 1978), certif. den. 79 N.J. 481 (1979).
[3] There is also an exception under case law with respect to an issue of merger whether or not that doctrine is based on double jeopardy principles. See State v. Truglia, supra; see also State v. Alevras, which, as to the waiver issue, must be read in light of State v. Taylor, 80 N.J. 353 (1979), where the Supreme Court suggested that the issue of merger must be raised where there is a "reasonable likelihood" of same at the time of plea to one offense embodied in a multiple charge indictment. Id. at 363.
[4] In State v. Keegan, 188 N.J. Super. 471 (App.Div. 1983), certif. den. 93 N.J. 320 (1983), we made clear that applications to suppress based on violations of the wiretap statute, N.J.S.A. 2A:156A-1 et seq., were not governed by R. 3:5-7 and, therefore, defendant had no right to appeal the denial of his motion to suppress following his subsequent guilty plea.
[5] The supplemental report was a companion to the 1979 report which urged amendment to R. 2:3-1(b) to permit any appeal by the State when not precluded by the constitution and to permit interlocutory appeals from orders entered during trial, as well as "before or after trial." See Report of the Supreme Court's Committee on Criminal Practice, 103 N.J.L.J. 413, 417, 418 (1979).